UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

FR. ROBERT HOATSON,                          :

                Plaintiff,              :         05 Civ. 10467 (PAC)

     -against-                               :         <u>OPINION AND ORDER</u>

NEW YORK ARCHDIOCESE,                        :
*et al.*,
                            :
                Defendant.

------------------------------------------------------------------X


HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Robert Hoatson ("Plaintiff") instituted this action on December 13, 2005[1] against ten defendants in four groups, each of which is separately represented: (1) the New York Archdiocese and Cardinal Edward Egan; (2) the Newark Archdiocese and Archbishop John J. Myers; (3) the Congregation of Christian Brothers, Father John O'Brien, Br. Laurence Boschetto,[2] and Br. Paul Kevin Hennessy; and (4) the Roman Catholic Diocese of Albany and Bishop Howard J. Hubbard ("Defendants").  Plaintiff filed an amended complaint on January 19, 2006.  Plaintiff alleges that for years he witnessed and experienced sexual abuse at the hands of the clergy, and that after he publicly exposed the abuse and coverup and the Catholic Church's handling of sexual abuse scandals, Defendants fired him from his position as Director of Schools at a Catholic school in Newark.

---

[1] On the day of the lawsuit, the Plaintiff and his attorney, John Aretakis, held a press conference to announce the commencement of litigation.
[2] To date, Br. Boschetto has not been served.  The allegations of Br. Boschetto's conduct with the Plaintiff date back to the early 1970's. (Am. Compl. ¶¶ 30, 31, 35, 37, 40.)

Based on these assertions, Plaintiff brings nine causes of action, two of which are based on federal law: 1) Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq; and 2) Title VII of the Civil Rights Act of 1964. The seven other causes of action are state claims: 1) violation of New Jersey statutory whistleblower laws; 2) intentional infliction of emotional distress; 3) tortious interference with employment; 4) sexual abuse; 5) breach of fiduciary duty; 6) negligence; and 7) hostile work environment.

On March 31, 2006, each of the Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).  Plaintiff responded on May 16, 2006 and Defendants replied on June 6, 2006.  On May 24, 2006, all Defendants moved for sanctions pursuant to Federal Rule of Civil Procedure 11.  Plaintiff responded on August 14, 2006; and Defendants replied on August 28, 2006.

In the normal course, the motions would have been argued in late summer or early fall, but on September 9, 2006, Plaintiff moved to recuse the Court on the grounds of prejudice and bias.  After the matter was briefed and argued, the Court issued its decision denying the recusal motion.  Hoatson v. N.Y. Archdiocese, et al., 05-CV-10467, 2006 U.S. Dist. Lexis 87877 (S.D.N.Y. Dec. 1, 2006).  Four days later, Plaintiff wrote to the Court indicating his desire to withdraw his RICO claim without prejudice. Defendants objected to withdrawal without prejudice.  At a subsequent conference held on December 21, 2006, the Court advised Plaintiff that he could withdraw the RICO claim with prejudice, but if Plaintiff chose not to do that, the Court would proceed to address the Defendants' motions to dismiss.  The Court also advised Plaintiff that absent the federal question claims, there would be no basis for federal jurisdiction since there

was no diversity.  The Court gave Plaintiff time to make his decision.  On January 5, 2007, Plaintiff chose not to withdraw with prejudice his RICO claim and the matter came on for oral argument on January 30, 2007.

The Court grants Defendants' 12(b)(6) motion to dismiss with prejudice Plaintiff's RICO and Title VII claims.  With the dismissal of the federal claims and since there is concededly no diversity, the Court declines to exercise supplemental jurisdiction over the state law claims and dismisses them without prejudice.  As for the motion for sanctions against John Aretakis, the Court imposes monetary sanctions and issues an admonishment.

## FACTS[3]

Plaintiff's amended complaint recounts various episodes of sexual abuse he and other members of the Church allegedly experienced at the hands of clergymen dating back to his entry into the Christian Brothers novitiate in the early 1970s.  Plaintiff further alleges that the Defendants have "engaged in an intentional and long standing practice of intimidating victims of clergy sexual abuse and their advocates including Plaintiff, and [have] a longstanding pattern or scheme of protecting priests from being arrested, charged, indicted or convicted for crimes of a sexual nature, as well as a criminal cover-up of same, and have retaliated against, harassed and discharged the plaintiff for exposing same."  (Am. Compl. ¶ 67.)

Plaintiff specifically alleges that in late May 2003, Plaintiff testified before the New York State Senate on behalf of clergy sexual abuse victims, and in

---

[3] In a separate case instituted by John Aretakis in the U.S. District Court for the Northern District of New York involving nearly identical RICO allegations as here, Judge Hurd noted: "The extensive and colorful portrayal of the social and political backdrop to defendants' alleged conduct is essentially irrelevant to the facts in this case."  Hall v. Tressic, 381 F. Supp. 2d 101 (N.D.N.Y. 2005).  The allegations of abuse here are just as disconnected from the claimed RICO violations as they were in the Northern District.

support of legislation to amend New York's statute of limitations regarding such crimes. (Am. Compl. ¶ 58.)  Almost immediately after testifying, according to the amended complaint, the Defendants "had the Plaintiff fired from his position as Director of Schools at Our Lady of Good Counsel Parish in Newark, New Jersey."[4]  (Am. Compl. ¶ 63.)

Plaintiff's experience is claimed to be similar to what others experienced for speaking out against sexual abuse by clerics and for helping victims of clerical sexual abuse.

## DISCUSSION

### I.  Motion to Dismiss Standard

The district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249-50 (1989) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). The court must accept as true all well-pleaded factual allegations in the complaint, and view them in the light most favorable to the plaintiff.  See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).  Despite the Rule's liberal standard, "conclusory allegations or legal conclusions masquerading as factual conclusions" are not sufficient to withstand a motion to dismiss.  Id.

### II.  RICO Claims

Plaintiff alleges a violation of 18 U.S.C. § 1962(c) and (d).  Subsection (c) makes it unlawful "for any person employed by or associated with any enterprise . . . to

---

[4] Although relieved from his position as Director of Schools, Plaintiff still receives a monthly stipend from the Church.

conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  Subsection (d) makes it "unlawful for any person to conspire to violate . . . subsection (c) . . . ."  What constitutes "racketeering activity" is not simply bad or offensive conduct, but rather what the statute specifically defines as racketeering activity in § 1961(1).  In order to have a civil remedy, a person must also be "injured in his business or property by reason of a violation of section 1962 . . . ."  18 U.S.C. § 1964(c).

### A.  1962(c)

To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  De Falco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).  Furthermore, the requirements of section 1962(c) must be established as to each individual defendant.  See id.

### i.  Enterprise

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The term "enterprise" includes both legitimate and illegitimate enterprises.  See United States v. Turkette, 452 U.S. 576, 582-83 (1981).  A RICO enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  Id. at 583.  The "enterprise" is neither the individual defendant nor the "pattern of racketeering activity;" rather it is "an entity separate and apart from the pattern of activity in which it engages," and must be alleged and proved separately.  Id.

As a matter of pleading, Plaintiff has failed to adequately allege the requisite "enterprise."  Plaintiff asserts that "[t]he relationship between the defendants constitutes an association in fact," over which defendants "Myers, Egan, and Hubbard all exhibit and exercise control."  (Am. Compl. ¶ 133.)  Further, he claims that "[t]he defendants Dioceses and/or the defendants Myers, Hubbard, and Egan constituted an actual enterprise as required by statute, and that each of these defendants has engaged in two or more predicate acts,"… and "[t]he enterprise has and has had continuity of structure and shared and common purpose and the scheme or pattern of protecting, hiding and moving sexually abusive priests has been going on for decades."  (Am. Compl. ¶¶ 146, 137.)

Beyond these wholly conclusory allegations, Plaintiff does not allege any facts that the defendants functioned "as a continuing unit," or were "an entity separate and apart" from their alleged illegal activities.  Rather, it appears that this group of Defendants has been grouped together for the sole reason that they all allegedly had a hand in Plaintiff's termination.  The "enterprise," however, must exist and function separately from the alleged illegal acts, and Plaintiff has failed to assert that.  There are simply no facts whatsoever to support Plaintiff's conclusory allegation that any "enterprise," as defined by RICO, existed.

### ii.  Pattern of Racketeering Activity

(a)      Pattern

To properly plead the existence of a pattern of racketeering, a plaintiff must allege and prove that "at least two acts of "racketeering activity" were committed in a 10-year period.  18 U.S.C. § 1961(5).  The predicate acts of racketeering must be

related and constitute a threat of continuing activity.  See Nw. Bell Tel. Co., 492 U.S. at

239.  Each defendant must have engaged in two predicate acts.  See De Falco, 244 F.3d at

306.  Similar to the allegations of "enterprise," there are only bald conclusory allegations

that each defendant committed two predicate acts.  There is not even a minimal attempt to

allege which predicate acts were performed by which Defendants.

> (b)   Racketeering Activity

 "Racketeering activity" is defined in 18 U.S.C. § 1961(1) to include, inter

alia, a number of crimes including kidnapping, extortion, obstruction of justice and mail

and wire fraud.  Plaintiff makes a laundry list of allegations in the amended complaint.[5]

Only three of them, however, could possibly constitute predicate acts under RICO: 1)

extortion under the Hobbs Act, 18 U.S.C. 1951; 2) mail and wire fraud, in violation of 18

U.S.C. § 1341 and § 1343; and 3) violations of the Protection of Children Against Sexual

Exploitation Act, 18 U.S.C. § 2251, et seq.  (Am. Compl. ¶ 142.)  Pleading requires more

---

[5] Plaintiff alleges that:

> The defendants Dioceses and the defendants are persons controlling or directing
> the enterprise and the affairs or have engaged in or joined in a conspiracy to
> intentionally, recklessly and/or negligently conceal criminal conduct of its
> agents, aid and abet the concealment of criminal conduct, aid and abet criminal
> sexual conduct, fail to report criminal conduct of its agents, obstruct justice,
> obstruct criminal investigation, obstruct state and/or local law enforcement,
> evade criminal and/or civil prosecution and liability, pay or offer to pay money
> to victims in order to keep its criminal conduct secret, violate the civil rights of
> children, families and vulnerable adults, engage in mail and/or wire fraud, and
> commit fraud and/or fraudulent inducement of its parishioners in furtherance of
> its scheme to protect predatory priests and other clergy from criminal and civil
> prosecution, to maintain or increase charitable contribution and/or avoid public
> scandal in the Roman Catholic Church or the defendants Dioceses.

(Am. Compl. ¶ 148) (emphasis added.)  Besides the prolix generality of this allegation,
the "and/or" allegations make it almost impossible to discern what wrongdoing is being
alleged and whether the alleged conduct is a criminal or civil wrong.

than a recitation of the statute purportedly violated; and Plaintiff has failed to sufficiently allege any racketeering activity.[6]

### *Hobbs Act*

Plaintiff maintains that he was the victim of extortion.  Pursuant to 18 U.S.C. § 1951(b)(2), extortion is defined as, "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

Plaintiff's allegation that Defendants "have engaged in the crimes of extortion and attempted extortion of the Plaintiff in an effort to silence and stop the lawful and legitimate acts," (Am. Compl. ¶ 147), is insufficient.  Plaintiff fails to allege that defendants either "pursued []or received 'something of value from' [Defendants] that they could exercise, transfer, or sell."  Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 405 (2003) (citations omitted) (holding that plaintiff's Hobbs Act extortion claim was insufficient because defendants did not "obtain" property from plaintiffs). Deprivation of his job, however wrongful, is not a claim under the Hobbs Act, because Defendants have not received any property from Plaintiff.  To conclude otherwise "would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion."  Id.

---

[6] Plaintiff has not even clearly stated which predicate acts he is alleging.  At oral argument, the Court pressed Plaintiff's Counsel to identify the predicate acts that form the basis of this RICO claim, to which Counsel responded, "we have a alleged, on that front, a larger picture."  See Oral Arg. Tr. 39, Jan. 30, 2007.  The Court explained that the predicate must be one of the enumerated acts in the statute, rather than a "larger picture."  At that point, Counsel seemed to concede that they lacked sufficient facts to establish predicate acts in his response that, "part of the issue that we deal with or are dealing with [in terms of sufficient pleading] is that we have asked that the Court, in its discretion, either to allow us to replead or to have discovery on some of these issues."  Id. at ¶ 42.  In the circumstances of this case, leave to replead cannot be granted.

### *Mail and Wire Fraud*

The mail fraud statute prohibits the use of mail to further "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses."  18 U.S.C. § 1341.  The wire fraud statute prohibits the use of wire, radio or television communication in furtherance of a scheme to fraudulently obtain money or property.  18 U.S.C. § 1343.  "Property" refers to property "in the victim's hands." Cleveland v. United States, 532 U.S. 12, 21 (2000) (holding that for purposes of the federal mail fraud statute, a government regulator does not part with "property" when it issues a license because such a license is not "property" in the government regulator's hands).

A complaint alleging RICO violations based on mail or wire fraud must allege that the defendant participated in at least two acts of mail or wire fraud.  See First Interregional Advisors Corp. v. Wolff, 956 F. Supp. 480, 485 (S.D.N.Y. 1997). Furthermore, these allegations must meet the rigorous pleading requirements of Federal Rule of Civil Procedure 9(b).  See First Capital Asset Mgmt. Inc. v. Satinwood, Inc., 385 F.3d 159, 178-79 (2d Cir. 2004).  Accordingly, "[t]o pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation."  Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990).

Again, Plaintiff has failed to allege any facts in support of his claim of wire or mail fraud.  Certainly, there is no particularity as to any of the fraud claims.  The bare allegation that "defendants took numerous predicate acts or steps in furtherance of their criminal conspiracy including … using the telephone lines and mail to mislead the plaintiff in an effort to have him damaged," (Am. Compl. ¶ 165), falls well short of

pleading with particularity and is insufficient to ground a predicate act for a RICO claim.

Further, Plaintiff's self-congratulatory statement that "[t]he element of racketeering has

also been properly pled in that the defendants have used the mail and telephone lines to

engage in their alleged conduct, and said conduct has alleged to be criminal and giving

rise to civil RICO claims," (Am. Compl. ¶ 176), is plainly insufficient.  It is nothing more

than a conclusory allegation.  Plaintiff has not sufficiently alleged that he was deprived of

"money or property" since loss of a job is not "property in the victim's hands."  See

Cleveland v. United States, 532 U.S. at 21.  There are no specific misrepresentations

alleged and, of course, none of them are claimed to have deprived him of his "money or

property" as required by the statute; rather, all alleged misrepresentations were directed at

persons other than Plaintiff.

### Protection of Children Against Sexual Exploitation Act

The Protection of Children Against Sexual Exploitation Act provides for

fines and imprisonment for people who exploit children.  18 U.S.C. § 2251, et seq.  The

only facts in Plaintiff's amended complaint that approximate relevancy to this claim is

that "persons controlling or directing the affairs of the enterprise and defendant Dioceses

as well as defendants Myers, Hubbard and/or Egan knew that Roman Catholic clergy

were sexually abusing and exploiting children and vulnerable adults and they showed

willful indifference and/or reckless or intentional disregard for these persons…."  (Am.

Compl. ¶ 149.)  Plaintiff does not allege any specific conduct on the part of any

Defendant that would be a violation of 18 U.S.C. § 2251, nor does he identify or even

refer to any specific minors in his amended complaint, sexual abuse of a specific minor,

or child pornography.  This raw allegation is utterly baseless and insufficient as a matter of law.

### B.  1962(d)

To establish a RICO conspiracy under 1962(d), a plaintiff must show that defendants "conspire[d] to violate any of the provisions of subsection (a), (b), or (c) of this [1962] section."  18 U.S.C. § 1962(d).  In Beck v. Prupis, 529 U.S. 494, the Supreme Court held that an "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO" is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d).  Id. at 505.  In Beck, as here, the overt act was the termination of employment.  Since firing someone is not a racketeering act, a conspiracy (even if proven) to do that act could not possibly be a violation of RICO.

As a matter of pleading, Plaintiff has failed to show there is an "enterprise," or a "pattern," or "racketeering activity."  In these circumstances, there is a complete failure to allege a violation of 18 U.S.C. § 1962(c), and consequently, the 1962(d) conspiracy claim cannot survive.  See Hall v. Tressic, 381 F. Supp. 2d 101, 112 (N.D.N.Y. 2005).  Accordingly, Plaintiff has failed to state a claim under § 1962(c) or (d).

Perhaps the deficient allegations of the Plaintiff's amended complaint could be cured by permitting Plaintiff to file a second amended complaint.[7]  Federal Rule of Civil Procedure 15(a) provides that a court shall freely grant leave to replead when justice so requires.  Fed.R.Civ.P.15(a).  However, leave to amend should not be given if such amendments would be futile.  See Ruffolo v. Oppenheimer & Co., 987 F.2d 129,

---

[7] At Oral Argument, Plaintiff's counsel suggested that amending the pleadings may resolve some of the pleadings deficiencies.  (Oral Arg. Tr. 42, Jan. 30, 2007.)

131 (2d Cir. 1993).  Similarly, leave to amend may be inappropriate where a complaint

has previously been amended.  See Landy v. Heller, White & Co., 783 F. Supp. 125, 133

(S.D.N.Y. 1991).

   The Court concludes that further amendments in this case would be futile,

because, among other reasons, Plaintiff has no standing to bring a RICO action, as

discussed in the following section.

### C.  RICO Standing

   Even if Plaintiff had properly alleged violations under § 1962(c) or (d),

which he has not, the RICO claim would nonetheless fail because he does not have

proper standing.  In order to have standing to bring a civil RICO claim, the Plaintiff must

show that he is within the scope of those RICO seeks to protect, and that the harm done

was one that RICO intended to prevent.  See J.S. Serv. Ctr. Corp. v. Gen. Elect. Tech.

Srvs. Co., Inc., 937 F. Supp. 216 (S.D.N.Y. 1996).  Specifically, a plaintiff must plead

that he suffered an injury to "business or property" that was caused by the defendant's

alleged RICO acts.  See Anza v. Ideal Steel Supply Corp., 126 S.Ct. 1991, 1994 (2006).

He must also show that his injury was directly caused by one or more of the alleged

RICO predicate acts.  See Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d

Cir. 1990).  Moreover, the racketeering activity or predicate acts must have proximately

caused the injury, meaning they are a "substantial factor in the sequence of responsible

causation, and … the injury is reasonably foreseeable or anticipated as a natural

consequence."  Id. at 23-24 (citations omitted).  Upon review of Plaintiff's amended

complaint, it is clear that he cannot meet this standing requirement.

The thrust of Plaintiff's RICO allegations is that he was injured by the termination from his position as Director of a Catholic school in retaliation for voicing his opposition to the Church's handling of sexual abuse allegations.  Plaintiff has not pled that his firing was caused by a predicate act; rather he alleges that his firing was in retaliation for not being silent and instead speaking out about the allegedly abusive behavior.  The purpose of RICO is not to redress collateral or tangential injuries.  To survive this motion to dismiss, Plaintiff must plead that his alleged injury—his termination—was proximately caused by the "racketeering activity."  Retaliatory firing is clearly not a listed predicate act or "racketeering activity."  The RICO violations that Plaintiff does raise, see supra, were all aimed at people other than the Plaintiff, and cannot provide standing for Plaintiff.  See  J.S. Serv. Ctr. Corp, 937 F. Supp. at 220.  The purpose of RICO liability is not to deter "any illegal act such as retaliatory firings for which there are state and common law remedies."  See Hecht, 897 F.2d at 24.

The Second Circuit has held for more than a quarter century that loss of employment for reporting or refusing to participate in an enterprise engaging in a pattern of racketeering activity is not an injury sufficient to confer RICO standing.  The leading Second Circuit decisions in this "refusal to cooperate" line of cases are Burdick v. Am. Express Co., 865 F.2d 527, 529 (2d Cir. 1989) and  Hecht v. Commerce Clearing House, Inc., 897 F.2d 21 (2d Cir. 1990).  In Burdick, the court denied RICO standing where a former vice president of a brokerage firm claimed to have been fired from his job for refusing to cooperate with the predicate acts of mail and securities fraud because this type of harm was "simply too remotely related to the predicate acts . . . to support a claim under RICO."  865 F.2d 527 (2d Cir. 1989).  The plaintiff also argued that he was

discharged as an integral part of the illegal scheme, rather than in retaliation for reporting it; the court rejected this differentiation between "preventive" and "retaliatory" as serving "no useful purpose under RICO." Id. at 529-30.  In Hecht, the Second Circuit extended its holding in Burdick.  The plaintiff brought a RICO action on the basis that his employer fired him, and he subsequently lost commissions, for refusing to cooperate with an ongoing conspiracy to defraud customers.  Hecht, 897 F.2d at 22.  The Second Circuit held that neither the termination nor the future loss of commissions were sufficient injuries to the plaintiff to confer RICO standing.  Id. at 24.  The court upheld the dismissal of the RICO claim because plaintiff was not the target of the racketeering enterprise and that the loss of commissions was not reasonably foreseeable as a natural consequence of the RICO violations.  Id; see also J.S. Serv. Ctr. Corp, 937 F. Supp. at 220-25 (finding no RICO standing where plaintiff claimed to have been fired for not cooperating with employer/contractor's scheme to defraud foreign officials because he was not a direct target of the racketeering activity); Comer v. Am. Fed'n of State, County & Mun. Employees, 01-CV-4260, 2003 WL 21697873 (S.D.N.Y. July 22, 2003) (finding that a former local union president lacked standing to assert civil RICO claim against international union, because removal as president and subsequent expulsion from membership in union was not caused by act that was independently wrongful under RICO); O'Malley v. Neill, 887 F.2d 1557 (11th Cir. 1989) (finding no RICO standing for vice president and dean of private university who was allegedly fired for refusing to participate in mail fraud scheme, because he was not was not fired "because of the commission of the predicate acts," and therefore causation was lacking).

At oral argument, Mr. Aretakis, counsel for Plaintiff, was asked to distinguish the <u>Burdick</u>/<u>Hecht</u> line of cases, which appear to be controlling.  Mr. Aretakis said that the Plaintiff was not fired, but he was the victim of a "theft of his ability to earn his living for that which he is trained."  (Tr. 36.) [8]  This explanation is facetious, and cannot be the product of a good faith or reasonable answer to the Court.

The <u>Burdick</u>/<u>Hecht</u> line of precedents goes beyond employer-employee terminations.  <u>See, e.g.</u>, <u>Abrahams v. Young & Rubicam Inc.</u>, 79 F.3d 234 (2d Cir. 1996) (holding that a foreign official who was fired from his job lacked standing even though he was the target of the bribery scheme and his private consulting business' reputation may have been harmed as a result of the case's publicity, because his injuries did not flow from the predicate acts of bribery); <u>Rand v. Anaconda-Ericsson, Inc.</u>, 794 F.2d 843 (2d Cir. 1986) (denying RICO standing to shareholders to assert claims against corporation's creditors on behalf of corporation).  Mr. Aretakis's purported redefinition of the harm (retaliatory firing to theft) does not help plaintiff in any way—the identical problem of causation is still present.  Plaintiff still must show that the RICO violations proximately caused this "theft of his ability to earn his living," and that plaintiff was an intended target of the RICO violations; Plaintiff has failed to do so.

## III.  Title VII

Plaintiff alleges that Defendant Newark Archdiocese and Defendant Archbishop Myers retaliated and discriminated against Plaintiff on the basis of his sexual

---

[8] Unless otherwise noted, references to "Tr." refer to the transcript of the Oral Argument on Defendants' motions to dismiss held before this Court on January 30, 2007.

orientation,[9] in violation of Title VII of the Civil Rights Act of 1964.  (Am. Compl. ¶ 189.)  Like the RICO claims, this claim fails for a number of reasons.

First, Plaintiff has not alleged that he exhausted his administrative remedies as required by 42 U.S.C. § 2000e-5(a); see, e.g., Ali v. Bank of New York, 934 F. Supp. 87, 93-94 (S.D.N.Y. 1996).  Furthermore, at this point, Plaintiff's claim is time-barred as it was not brought within 180 days of the alleged discriminatory conduct.  See, e.g., Burrell v. City Univ. of N. Y., 894 F. Supp. 750, 758 (S.D.N.Y. 1995).

Even if Plaintiff had properly and timely exhausted his administrative remedies, which Plaintiff conceded he has not, (Tr. 56), his claim would nonetheless fail because Title VII does not apply to claims of discrimination based on sexual orientation.[10]  U.S.C. § 2000e2-(a)(1); Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir. 2000) ("The law is well-settled in this circuit and in all others to have reached the question that . . . Title VII does not prohibit harassment or discrimination because of sexual orientation.").

Consequently, Plaintiff has failed to state a legally sufficient Title VII claim.

---

[9] Plaintiff seems to be claiming reverse-discrimination in that he is heterosexual, and was discriminated against for "not being or participating in homosexual activities that ha[ve] been requested of the plaintiff, and that is customary and commonplace in the priesthood or religious life."  Am. Compl. ¶ 189.

[10] Title VII, 42 U.S.C. § 2000e-2(a)(1), makes it unlawful:

> [T]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin….

**IV.  Pendent Claims**

This Court has jurisdiction over this case on the basis of Plaintiff's federal questions claims under RICO and Title VII.  28 U.S.C. § 1331.  There is no diversity.[11]  In light of the dismissal of all federal claims with prejudice, the Court declines to exercise supplemental jurisdiction.  Accordingly, the Court dismisses the state claims without prejudice.[12]

**V.  Sanctions**

On May 24, 2006 all Defendants jointly moved, pursuant to Federal Rule of Civil Procedure 11, for sanctions against Plaintiff's counsel, John Aretakis.  They contend that the amended complaint filed by Mr. Aretakis is frivolous, brought in bad faith and for an improper purpose.

### *Rule 11*

Rule 11 authorizes a court to sanction an attorney who violates his certification that "to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances … the claims, defenses, and other legal contentions [in the pleadings] are warranted under existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  Fed.R.Civ.P. 11(b)(2), (c).  The purpose of Rule 11 is to "deter baseless filings in district court … and streamline the administration and procedure of the federal courts."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).  Rule 11, therefore, imposes an "affirmative duty on each attorney to conduct a reasonable inquiry into the

---

[11] Plaintiff concedes that the Court does not have diversity jurisdiction because Plaintiff's citizenship is not diverse from all defendants.  (See Tr. 33.)
[12] Because the Court is dismissing all claims, it declines to reach the merits of Defendants' Rule 12(b)(1) Motions to Dismiss.

viability of a pleading" before actually signing it.  O'Malley, 896 F.2d at 706 (citations

omitted).  That signature certifies that the attorney has made the necessary inquiry and

believes the claim to be supported by the facts and warranted by law.  Id.  In determining

whether the attorney's inquiry was reasonable in light of the circumstances, the Court

must apply an objective test of reasonableness.  Id.  Doubts as to the viability of a signed

pleading, are to be resolved in favor of the signer; however, if it is clear that the action

was "destined to fail based on the facts and existing precedent, and where no reasonable

argument could be advanced to change or extend the present law, rule 11 requires a

sanction." Id.[13] (citing Norris v. Grosvenor Mktg., Ltd., 803 F.2d 1281, 1288 (2d Cir.

1986).  The Advisory Committee Notes accompanying Rule 11 are particularly helpful in

listing factors for making a sanction determination:

> Whether the improper conduct was willful, or negligent; whether
> it was part of a pattern of activity, or an isolated event; whether it
> infected the entire pleading, or only one particular count or
> defense; whether the person has engaged in similar conduct in
> other litigation; whether it was intended to injure; what effect it
> had on the litigation process in time or expense; whether the
> responsible person is trained in the law; what amount, given the
> financial resources of the responsible person, is needed to deter
> that person from repetition  in the same case; what amount is
> needed to deter similar activity by other litigants.

Fed.R.Civ.P. 11, Advisory Committee Notes.

Civil RICO is "an unusually potent weapon—the litigation equivalent of a

thermonuclear device."  Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991).

Accordingly, Rule 11 is particularly important in these cases "because commencement of

a civil RICO action has 'an almost inevitable stigmatizing effect' on those named as

defendants." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 660

---

[13] The portion of O'Malley making sanctions mandatory upon finding a violation of Rule 11 was overruled
by the 1993 amendment to Rule 11, leaving the imposition of sanctions within the district court's
discretion.

(S.D.N.Y.1996) (citations omitted).  For the reasons set forth below, the Court concludes

that an admonishment concerning Mr. Aretkakis's behavior is necessary and also imposes

a sanction in the amount of $8,000.

Taking Mr. Aretakis's behavior in this case as a whole, it is clear that his

conduct is sanctionable because it is sloppy and unprofessional; the pleadings are so far

removed from adequate that they cannot be said to have been filed in good faith or after a

reasonable inquiry; the bulk of the allegations dealing with sexual abuse are wholly

irrelevant to the RICO claim, and; the Title VII claim is admittedly without basis in law.

### *"Warranted Under Existing Law"*

In bringing the RICO and the Title VII actions, Mr. Aretakis violated Rule

11 because no reasonable attorney would have believed these claims were "warranted

under existing law" given the wholly deficient facts of the case.  See Fed.R.Civ.P. 11.

The Title VII claim fails in every possible way.  Mr. Aretakis brought the

complaint knowing that his client had not previously sought the requisite administrative

relief as required by law; that the matter was time barred; and more importantly, the

alleged discrimination for which he seeks relief is clearly not within the scope of the

statute.   By no stretch of the imagination was this claim brought in good faith after a

reasonable inquiry into the law.

As to the RICO claims, as described previously in this opinion, there is

little in the lengthy and prolix complaint that has anything to do with the claimed RICO

violation.  Those allegations that deal with RICO are wholly lacking in: 1) the

particularity required by Federal Rule 9(b) with regard to the allegations of fraud; 2) the

requisite showing of an "enterprise," "pattern," or "racketeering activity;" and 3) the

requisite showing of injury to "business or property" needed for standing under 1964(b). The amended complaint does not fail on just one or two of RICO's pleading requirements, but rather on every single requirement.

As to an "enterprise," Plaintiff simply alleges a conclusory allegation that the defendants do in fact comprise an "enterprise" under RICO.  Obviously, simply stating it does not make it so.  As to "pattern," the amended complaint does not even specify what two predicate acts each defendant participated in, let alone allege sufficient predicate acts generally.  With regard to "racketeering activity," the amended complaint fails to allege facts that could establish any predicate act whatsoever.

It is barren of a single specific mailing or wire transmission by any defendant, despite the heightened pleading requirements of Rule 9(b) for mail and wire fraud allegations.  All we are told is that phones and the mail were used.  Obviously then, the requirements of alleging the time, place and content of each communications was also non-existent.  Nor does the amended complaint allege what "money or property" the defendants obtained or sought to obtain from Plaintiff.  As for the Hobb's Act allegations, the amended complaint is again barren of the most basic elements of the claim.  Plaintiff has not alleged what "property" the Defendant's "obtained" from Plaintiff.  The Protection of Children Against Sexual Exploitation allegation is egregiously deficient, as it alleges not a single element of that crime.

With regard to standing under § 1964(c), Mr. Aretakis's memorandum of law neglects to even mention the leading cases which are squarely against the relief he

seeks: [14] <u>Beck v. Prupis</u>, 529 U.S. 494 (2000) (firing of an employee does not constitute a RICO violation); <u>Burdick v. Am. Express Co.</u>, 865 F.2d 527 (2d Cir. 1989) (firing of an employee in retaliation for not participating in RICO activities cannot confer RICO standing); <u>Hecht v. Commerce Clearing House, Inc.</u>, 897 F.2d 21 (2d Cir. 1990) (firing of an employee and subsequent loss of commissions cannot constitute a RICO violation).

Courts in this circuit have repeatedly held that sanctions are appropriate in RICO cases with similarly deficient pleadings.  For example, in <u>O'Malley v. N.Y. City Transit Auth.</u>, 896 F.2d 704 (2d Cir. 1990), the plaintiff filed a RICO action against his former employer, the New York Transit Authority, after he was fired.  The district court found the RICO claim was nothing more than "a simple claim made by an employee that he was wrongfully terminated," that no triable issues of fact existed concerning the alleged predicate acts of mail fraud, obstruction of justice, and extortion, and that plaintiff had failed to show a pattern of racketeering activity.  <u>Id.</u> at 705.  The Court further found that the RICO claim was "baseless" and "outrageous," but the court did not grant defendants' motion for Rule 11 sanctions due to the "subtle nuances in second circuit learning with respect to racketeering activity and enterprise."  <u>Id.</u>

On appeal, the Second Circuit held that the plaintiff had "failed to allege even one act that could qualify as racketeering activity under RICO," that the allegations were "preposterous" and "obvious[ly] deficien[t]," and that "from the outset [plaintiff's] obstruction of justice claim had no chance."  <u>Id.</u>  In an attempt to avoid Rule 11 sanctions, the plaintiff argued that since RICO should be broadly construed, the court should interpret the statute in question as extending to the case at bar.  The court rejected

---

[14]  This is not the first time the Court has encountered this practice.  In support of his motion to recuse the Court, Mr. Aretakis cited a particular case as controlling, without disclosing he was quoting from the dissenting opinion.

this argument as "lame" and remanded for sanctions. Id.;[15] see also, Katzman v.

Victoria's Secret Catalogue, 167 F.R.D. 649 (S.D.N.Y. 1996) (finding a Rule 11 violation

where "even a cursory examination of the requirements for bringing suit under RICO

would have revealed the impossibility of the claim's success" and sanctioning $5,000 for

defendants' legal fees), aff'd, 113 F.3d 1229 (2d Cir. 1997); McLoughlin v Altman, 92-

CV-8106, 1995 WL 640770 (S.D.N.Y. Oct. 31, 1995) (finding a Rule 11 violation where

plaintiff failed "to properly plead a single element of a substantial RICO claim …

[which] manifest[ed] a total lack of legal research and preparation on the part of

plaintiff's attorney" and sanctioning the full amount of defendants' legal fees).

   Mr. Aretakis seems to have simply ignored the overwhelming precedent

on point.  The core thrust of Plaintiff's amended complaint is that he testified before a

New York State Senate Committee as to his views on the Catholic Church's handling of

numerous sex scandals, and thereafter, he was removed from his position.  While Mr.

Aretakis claims a distinction here in that Plaintiff lost not only his job, but also his

"career," and all his training, (Tr. 36) there is no difference as a matter of law from others

who lost their jobs because they refused to participate in a RICO violation.  Loss of a job,

a position, or a career, are not injuries for which RICO provides a remedy because being

fired or terminated is not a racketeering activity.  ["L]oss of employment … for refusing

to participate in an enterprise engaging in a pattern of racketeering activity is not injury

sufficient for standing."  Hecht, 897 F.2d at 24.

   At Oral Argument, this Court suggested that firing people was not and

could not be a RICO violation, (Tr. 36) and questioned counsel how, under the

---

[15] The portion of O'Malley making sanctions mandatory upon finding a violation of Rule 11 was overruled by the 1993 amendment to Rule 11, leaving the imposition of sanctions within the district court's discretion.

Burdick/Hecht line of cases, Plaintiff could have standing.  Mr. Aretakis responded that

this was not a firing.  (Tr. 36-37.)  Of course, this answer is at variance with the

allegations in the amended complaint.  Apparently recognizing that firing was not a listed

predicate act within § 1961(1), Mr. Aretakis applied a revised label to the harm: "I do not

believe that this is a firing.  It's much more than that.  It's a – it's a theft of his ability to

earn his living for that which he is trained."  (Tr. 36.)  The Court observed that the

complaint does not allege a theft and suggested that Mr. Aretakis was playing with

words.  Mr. Aretakis continued that "they [defendants] have taken his career from him."

(Tr. 37.)  After more discussion on how any of the alleged acts, even if true, could be a

RICO predicate act of fraud or extortion, Mr. Aretakis said that he had instead "alleged a

larger picture."  (Tr. 39.)  But "the larger picture" is wholly devoid of a single act which

constitutes a racketeering activity under § 1961(1).

       Granted, the RICO statute is complex, arcane, and difficult to plead.  See,

e.g., Zito v. Leasecomm Corp., 02-CV-8074, 2003 U.S. Dist. Lexis 17236 at *14

(S.D.N.Y. Sept. 30, 2003) ("RICO is a complex statute, whose defining elements consist

of abstract conceptions").  However, "mere lack of clarity in the general state of some

areas of RICO law cannot shield every baseless RICO claim from rule 11 sanctions, and

an affirmation of [Plaintiff's] view would encourage bringing all sorts of groundless

RICO claims, in direct contravention of both the language and purpose of amended rule

11."  O'Malley, 896 F.2d at 709.  While it is best to be tolerant, this is not the first time

Mr. Aretakis has brought this kind of scurrilous lawsuit, making inflammatory allegations

which have nothing to do with the claimed RICO violation.

*Mr. Aretakis's Prior RICO Cases*

In 2003, Mr. Aretakis made and then withdrew with prejudice a claimed RICO violation in N.Y. Supreme Court, Albany County proceeding.  Doe v. Bertolucci & Doyle, No. 6731-02 (Sup. Ct. Albany County, Sept. 19, 2003).  The complaint there, as here, charged sexual abuse by the clergy and a cover-up by the Catholic Church in Albany.  The defendants made a motion to dismiss for insufficiency, and that motion was pending when Mr. Aretakis decided to withdraw the RICO cause of action with prejudice.

In 2004, in a matter in this District, Mercon v. Father DiPasquale, No. 04-CV-2793, Mr. Aretakis instituted yet another RICO action based on the clergy sexual abuse scandal, and named the Diocese of Albany and Bishop Hubbard as defendants. Judge Chin asked whether there was clearly criminal conduct: "Is this really a RICO case? . . .  it just doesn't sound like a RICO claim to me."  (Hrg. Before Judge Chin, May 24, 2004, Tr. 10-11.)  Mr. Aretakis assured the Court "there was criminal activity on-going regarding the Diocese of Albany." (Id. at 13.)  The Court said that Mr. Aretakis's complaint had "sloppy mistakes" and directed an amended pleading be filed.  When Mr. Aretakis filed the amended complaint, the RICO allegations were dropped.[16]

Later in 2004, Mr. Aretakis filed a RICO complaint in U.S. District Court for the Northern District of New York.  Hall v. Tressic, 381 F. Supp. 2d 101 (N.D.N.Y. 2005).  He alleged that there were numerous instances of clerical sexual abuse and a conspiracy to cover-up that abuse by the Diocese of Albany and Bishop Hubbard, among others.  Judge Hurd dismissed the RICO claims and held that the allegations of sexual abuse by clerics and the Church's attempts at covering up the abuse were:

---

[16]  On March 31, 2005, the amended complaint was dismissed with prejudice.

> . . . essentially irrelevant to the facts of this case.  RICO requires that the
> plaintiff demonstrate conduct in a pattern of racketeering that injures the
> plaintiff…. Plaintiff has listed numerous defendant acts and struggled to
> categorize them as RICO predicate acts.  To be clear, the only allegations
> that are relevant to support the RICO claims are those actually engaged
> in by the instant defendants that violate § 1961 and may be related to
> Plaintiff's injuries.

Id. at 107-8.

### *Mr. Aretakis's Pleadings in the Case at Hand*

As with the action before Judge Chin, this complaint is sloppy and filled with mistakes.  For example, it names a dead man as a defendant.  (Am. Compl. ¶ 9.)  It also repeatedly refers to the "Ratzinger defendant" who is not, in fact, a named defendant (Am. Compl. ¶¶ 82, 83 & 85);  This is an apparent reference to the Pope, although one cannot be sure because the complaint refers to him as "the Pop."  (Am. Compl. ¶ 82.)  At oral argument, Mr. Aretakis advised the Court that Plaintiff was suing neither the Pope nor the Vatican, although he suggested he could.  (Tr. 32-33.)  He said that the references to the dead defendant, the "Pop" and the repeated references to the "Ratzinger defendant" were "typos."  (Tr. 32.)  Mr. Aretakis has also named Laurence Boschetto in the caption as a defendant, and makes detailed sexual abuse allegations against Br. Boschetto, which occurred more than 30 years ago, yet Br. Boschetto has never been served in this action.  (Am. Compl. ¶¶ 30-31.)  He alleges a cause of action for "tortuous" interference with Plaintiff's employment, a mistake made not just once, but twice.  (Am. Compl. ¶ 116.)  He states that "insurance law" is a predicate act, although insurance law violations are clearly not applicable to this case and are never mentioned again in the amended complaint. (Am. Compl. ¶ 142.)

The same conclusions reached by Judge Hurd concerning the RICO allegations are applicable here.  But more to the point on the issue of sanctions, Mr.

Aretakis repeats almost word for word the precise allegations which Judge Hurd found to

be wholly irrelevant to the RICO claim and completely inadequate for alleging a RICO

violation.  Several examples will suffice:

        Paragraph 237 of the complaint in <u>Hall v. Tressic</u> alleges:

> Racketeering activity may be defined as acts indictable
> under federal law, including predicate mail and wire
> fraud, as well as a criminal conspiracy and violations of
> insurance law and laws protecting the tracking in child
> pornography and taking children across state lines for
> purposes of sexual abuse.  18  U.S.C. § 1341, § 1343, the
> Hobbs Act § 1951, § 161(1)(b), and the "Protection of
> Children Against Sexual Exploitation Act of 1977." Or
> 18 USC § 2251, et seq.

        Paragraph 142 in the amended complaint in this case is identical:

> Racketeering activity may be defined as acts indictable
> under federal law, including predicate mail and wire
> fraud, as well as a criminal conspiracy and violations of
> insurance law and laws protecting the tracking in child
> pornography and taking children across state lines for
> purposes of sexual abuse.  18  U.S.C. § 1341, § 1343, the
> Hobbs Act § 1951, § 161(1)(b), and the "Protection of
> Children Against Sexual Exploitation Act of 1977." Or
> 18 USC § 2251, et seq.

        Another example of "cutting and pasting" allegations from a pleading held

to be inadequate is:

        Paragraph 68 of the complaint in <u>Hall v. Tressic</u> claims:

> The defendants have engaged in an intentional and long standing practice
> of intimidating victims of clergy sexual abuse, and a longstanding
> practice of protecting, assisting and moving around priests who engaged
> in sexual misconduct, including the defendant TRESSIC, and a
> longstanding pattern or scheme of protecting priests from being arrested,
> charged, indicted or convicted for crimes of a sexual nature, as well as
> for civil claims.

        Paragraph 67 in the amended complaint in this case makes an almost

identical claim:

The defendants have engaged in an intentional and long standing practice of intimidating victims of clergy sexual abuse and their advocates including the plaintiff, and a longstanding practice of protecting, assisting and moving around priests who engaged in sexual misconduct, including the defendants and a longstanding pattern or scheme of protecting priests from being arrested, charged, indicted or convicted for crimes of a sexual nature, as well as a criminal cover-up of same, and have retaliated against, harassed and discharged the plaintiff for exposing the same.

Another example involves a change from a singular "DIOCESE" to a plural "DIOCESES."  Paragraph 243 of the complaint in Hall v. Tressic states:

The defendant DIOCESE and the defendants are persons controlling or directing the enterprise and the affairs or have engaged in or joined in a conspiracy to intentionally, recklessly and/or negligently conceal criminal conduct of its agents, aid and abet the concealment of criminal conduct, aid and abet criminal sexual conduct, fail to report criminal conduct of its agents, obstruct justice, obstruct criminal investigation, obstruct state and/or local law enforcement, evade criminal and/or civil prosecution and liability, pay or offer to pay money to victims in order to keep its criminal conduct secret, violate the civil rights of children, families and vulnerable adults, engage in mail and/or wire fraud, and commit fraud and /or fraudulent inducement of its parishioners in furtherance of its scheme to protect predatory priests and other clergy from criminal and civil prosecution, to maintain or increase charitable contributions and/or avoid public scandal in the Roman Catholic Church or the defendant ALBANY DIOCESE.

Paragraph 148 in the amended complaint in this case makes the same allegation in plural form:

The defendants DIOCESES and the defendants are persons controlling or directing the enterprise and the affairs or have engaged in or joined in a conspiracy to intentionally, recklessly and/or negligently conceal criminal conduct of its agents, aid and abet the concealment of criminal conduct, aid and abet criminal sexual conduct, fail to report criminal conduct of its agents, obstruct justice, obstruct criminal investigation, obstruct state and/or local law enforcement, evade criminal and/or civil prosecution and liability, pay or offer to pay money to victims in order to keep its criminal conduct secret, violate the civil rights of children, families and vulnerable adults, engage in mail and/or wire fraud, and commit fraud and /or fraudulent inducement of its parishioners in furtherance of its scheme to protect predatory priests and other clergy from criminal and civil prosecution, to maintain or increase charitable contributions and/or avoid public scandal in the Roman Catholic Church or the defendant DIOCESES.

These are just a few examples; a full comparative reading of the RICO claim in the <u>Hall</u> case and the amended complaint here demonstrates that Mr. Arektakis simply regurgitated what a U.S. District Court already held to be inadequate.  Having been told that his pleadings were inadequate, simple repetition here cannot have been in good faith or done after a reasonable inquiry.  It should be noted that Mr. Aretakis did not take an appeal from Judge Hurd's decision; nor does he cite to the case here or attempt to distinguish it.

Mr. Aretakis has brought RICO claims on a frequent enough basis that he ought now to be held to a professional standard.  Mr. Aretakis's pleadings are wholly inadequate.  He proceeded in the face of well established law in this Circuit which squarely held that his client had no standing.  He did not cite that law or acknowledge or refer to it in any way in the amended complaint.  At oral argument, he maintained that his client had not been terminated as alleged numerous times in the amended complaint, but rather that his job had been stolen from him.  The make-believe answer is unworthy of someone claiming to be a professional.[17]

Finally, further evidence of Mr. Aretakis's motives is the drumbeat of publicity which Mr. Aretakis has sought.  The day he and his client filed this complaint, he held a press conference to announce his lawsuit.  This appears to be his common practice.  The immediate link between the filing of the complaint and the press conference support the inference that Mr. Aretakis's intention was to injure.  That intent is confirmed by Mr. Aretakis's statements in which he describes himself as an activist for

---

[17] Not surprisingly, Mr. Aretakis's response to the Motion for Sanctions does not respond in a meaningful way as to why sanctions are not appropriate here.  Instead, Mr. Aretakis recounts an irrelevant action in Tucson, Arizona, and another regurgitation of thrice-told tales of sexual abuse, plus non-sequiturs concerning a drunken process server with felony convictions attempting to serve process, among other wholly irrelevant topics.

clergy sexual abuse victims and is quoted as intending to "continue to humiliate and embarrass the Church" by bringing incidents of sexual abuse to light, even if he cannot bring them in court. [18]  This intent to humiliate and embarrass is further manifested in the amended complaint which is littered with wholly irrelevant, inflammatory, and embarrassing facts concerning defendants and non-defendants alike that have no bearing on the actions brought, such as "it was widely known that he [one of the defendants] was an alcoholic."   (Am. Compl. ¶ 27.)  Accordingly, the Court finds that sanctions are necessary in this case.

### The Sanction

In determining the appropriate sanction under Rule 11, the Court is guided by the rule that the sanction should "be limited to what is sufficient to deter repetition of such conduct," and that it may "consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed.R.Civ.P. 11(c)(2).  Because the purpose of Rule 11 is to deter, not reimburse, see Pavelic & LeFlore v. Marvel Ent. Group, 493 U.S. 120, 126 (1996), the Court declines to grant Defendants' request of full reimbursement of the attorneys' fees associated with the motions to dismiss.  Rather, the Court finds that a sanction in the amount of $8,000 is the appropriate amount "to deter repetition of such conduct."  Given the circumstances here, the sanction is to be paid to the four law firms representing the Defendants at the rate of $2,000 each.

---

[18] John Caher, Missed Deadlines Halt Claims of Clergy Abuse, NYLJ 1 Feb. 22, 2006, col. 4.

The Court imposes a non-monetary sanction as well. Mr. Aretakis is admonished that if he brings another RICO action in this District, he must immediately call to the attention of the Judge assigned to the case that he has filed numerous RICO actions to date, that none have succeeded, and that he was sanctioned in the amount of $8,000 in this proceeding for violating Rule 11. See, e.g., Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 02-CV-2561, 2003 WL 22227956 (S.D.N.Y. Sept. 23, 2006).

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the federal civil RICO claim and the Title VII claim are GRANTED and, accordingly, the federal claims are dismissed with prejudice. The Court declines supplemental jurisdiction over the state claims, and therefore all remaining claims are dismissed without prejudice. Mr. Aretakis is sanctioned in the amount of $8,000, and admonished as indicated. The Clerk of the Court is directed to enter an Order closing this case.

Dated:  New York, New York
       February 8, 2007

SO ORDERED

_____

PAUL A. CROTTY
United States District Judge

30